On petitioner's petition for reconsideration filed January 19, petition granted, former opinions withdrawn, reversed and remanded June 13, reconsideration denied July 12, petition for review denied October 24, 1978

# ROBBINS, *Petitioner,*

*v.*

# EXECUTIVE DEPARTMENT, MANPOWER PLANNING DIVISION, *Respondent.*

## (ERB 476, CA 8115)

580 P2d 194

Lester P. Robbins, Redmond, appeared pro se for petition.

James A. Redden, Attorney General, Al J. Laue, Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem, appeared contra.

GILLETTE, J.

**GILLETTE, J.**

Petitioner seeks reconsideration of our former opinion, *Robbins v. Executive Dept.,* 31 Or App 769, 571 P2d 154 (1977), in which we upheld his dismissal from the classified service for insubordination. We grant the petition for reconsideration, withdraw our former opinion, and reverse.

In February, 1975, petitioner accepted a position as "Field Representative" for the State Manpower Planning Division (Division) of the Executive Department. In April, 1976, petitioner, who was stationed in Redmond, Oregon, was informed that he was being transferred to Salem as part of a reorganization of the Division. Petitioner was told that in Salem his working title would be "Manpower Analyst" and he would devote less time to field representative work and would have certain additional grant writing responsibilities which had not been part of his former duties. On May 5, 1976, petitioner advised the director of the Division that he would not accept the position in Salem and requested termination of his services as "Field Representative." He refused to resign. The director then gave petitioner notice of his transfer pursuant to Personnel Division Rule 46-600.[1] When petitioner failed to report for duty in Salem, he was dismissed for insubordination.

In his petition, petitioner claims we erred in (1) assuming that the Division had authority to order his geographic transfer, and, even if such authority exists, (2) in ruling that petitioner's transfer was to a position

---

[1] "Transfers Without Consent. Appointing authorities shall give an employe 45 days notice of a geographic transfer if the transfer is being made without the consent of the employe. Upon written request of the employe, the administrator shall investigate to determine if the transfer is being made for any reason other than the good of the service. The administrator shall provide the requesting employe a written statement of findings and the reasons for such findings. Should the administrator's findings show cause of transfer to be for any reason other than the good of the service the transferred employe shall be reinstated in the original position and this action shall constitute a rescinded transfer."

of the same class or rank which he was insubordinate in refusing to accept.

## Geographic Transfer

The authority of any division of the classified service to transfer an employee is established by ORS 240.535:

"An appointing authority may at any time assign an employee from one position to another position in the same class or rank in his division of the service * * *"

■ "Assign," we take it, means "transfer." Petitioner contends that "assign" in ORS 240.535 does not authorize *geographic* transfer. Our former opinion in this case did not squarely meet this contention. We now hold that the power to "assign" in ORS 240.535 includes the right to transfer geographically.[2] Any other rule would mean that any employe in a small field office would be able to refuse transfer to the same duties at some other location, no matter how much the appointing authority needed to move him.

## New Position

■ The harder question remains: was the proposed reassignment of petitioner to Salem a transfer "to another position in the same class or rank, so that petitioner was obliged to accept it?"

"Class" is defined in ORS 240.015(2) as

"* * * a group of positions * * * sufficiently alike in duties, authority and responsibilities that the same qualifications may reasonably be required for, and the same schedule of pay can be equitably applied to, all positions in the group."

"Rank" is not defined. However, two statutes utilize the term "rank" in such a way as to give us insight into its meaning. ORS 240.545 provides:

---

[2]The governmental administrative structure has apparently assumed it had this authority. Several rules have been promulgated concerning geographic transfers. *See, e.g.,* Personnel Division Rule 46-600, cited in footnote 1, *infra.*

"No employe shall be transferred from a position in one class to a position in another class of a higher rank or for which there are substantially dissimilar requirements for appointment unless he is appointed to such latter position after certification of his name from a list in accordance with the provisions of this chapter."

ORS 240.550 provides:

"Any change of an employe from a position in one class to a position in a class of lower rank shall be considered a demotion and shall be made only in accordance with the procedure prescribed for dismissal, except when an employe submits to the administrator a written request for change to a class of lower rank, and the request is granted, such change shall be termed a 'voluntary demotion.' "

We conclude from the references to "class of a higher rank" and "class of lower rank" that "rank" must be "a group of classes having the same pay scale." Thus, a secretarial position having a pay scale between $800 and $1,000 would be of a different *class* but the same *rank* as a business machine operator position having a salary range of $800 to $1000.

■ In our prior opinion, we treated the question of whether petitioner had been transferred to a position of the same class or rank as one of fact, and held that there was substantial evidence to the effect that the new position was of the same class and rank. Upon reconsideration, and after once again thoroughly analyzing the record, we conclude that our prior opinion was in error. We stated:

"There is substantial evidence that the 'Field Representative' position was amalgamated in the 'Manpower Analyst' position which was essentially only a change in the name of the position." *Robbins v. Executive Dept.,* *supra,* at 772.

Only the first half of this statement is correct. The "Field Representative" position *was* amalgamated into the "Manpower Analyst" position, but all the evidence shows that far more than a mere change in the name of a position occurred. Qualifications for the two

positions were different; the duties of the new position differed decidedly in nature[3] from those of petitioner's previous assignment; the salary scale for the new job, while it overlapped the old, extended two pay levels higher.[4]

Since a different salary schedule and significant new duties were involved, petitioner's proposed transfer was *not* to a position of the same class or rank. Petitioner could not be required, *at the risk of being dismissed for insubordination if he refused,* to accept the new position; his refusal to do so or resign was not insubordination; his discharge for insubordination was invalid.[5]

From the tenor of his briefs and his correspondence with his superiors it is clear that petitioner would not, in any event, have accepted a transfer to Salem; he wished to remain in Bend. This probably means that petitioner will remain separated from the classified service. This does not moot the questions before us, however, because the manner in which petitioner left

[3] The new duties included preparing grant applications, which is very different from the person-to-person counselling services petitioner previously performed.

[4] Finding of Fact No. 6 of the Hearings Officer, which was adopted by the Board and which stated in part,

"* * * these two job classifications were equal in rank and salary range * * *

is thus wrong. Equally wrong is Finding No. 20:

"None of the Field Representative Positions was abolished."

The *work* of the "Field Representative" survives, amalgamated to another job which has substantial additional duties. But the *position* of "Field Representative" is gone.

[5] Personnel Division Rules 12-100(23):

"* * * a separation from the service because of shortage of funds or materials, abolishment of position, or for other involuntary reasons not reflecting discredit on an employee."

Personnel Division Rules 61-100:

"An appointing authority may lay off an employee because of an *abolition of position,* shortage of funds or work, a material change in duties or changes in an organizational unit." (Emphasis added.)

Although they could not discharge him for cause, the Executive Department apparently did have the authority to lay him off.

the service has at least two significant collateral consequences: (1) it affects his eligibility for unemployment benefits, and, more importantly, (2) the distinction between being fired for cause on the one hand and merely being laid off because one's job was abolished on the other could have a substantial impact on one's future employability both within and without the classified service.

The petition for reconsideration is granted, our former opinion is withdrawn, and the matter reversed and remanded to the Executive Department for appropriate action consistent with this opinion.

Reversed and remanded.

Judges Lee and Buttler dissent.